**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| INTERNATIONAL FEDERATION OF PROFESSIONAL & TECHNICAL ENGINEERS, AFL-CIO 513 C Street NW Washington, DC 20002 | Case No. _____ |
| Plaintiff, | **COMPLAINT** |
| v. | |
| DONALD J. TRUMP President of the United States 1600 Pennsylvania Avenue NW Washington, DC 20500 | |
| SEAN DUFFY Acting Administrator National Aeronautics and Space Administration 300 E Street SW Washington, DC 20546 | |
| Defendants. | |

## INTRODUCTION

1.      Federal civilian workers have had the legal right to collectively bargain with their government agency employers since the early 1960s. When Congress adopted the Civil Service Reform Act of 1978, Congress specifically found that "labor organizations and collective bargaining in the civil service are in the public interest." 5 U.S.C. § 7101(a). Congress codified an extensive labor management relations framework for federal civil servants in Chapter 71 of Title 5 of the U.S. Code ("Chapter 71" or "FSLMRS").

2.      Plaintiff International Federation of Professional & Technical Engineers (IFPTE) is a labor organization whose members include thousands of workers employed by the National Aeronautics and Space Administration (NASA). IFPTE's five bargaining units at NASA have had continuous representation for purposes of collective bargaining for decades, across multiple

presidential administrations (both Republican and Democratic) as well as during wartime and peacetime.

3.    This lawsuit challenges President Trump's Executive Order No. 14343, "Further Exclusions from Federal Labor-Management Programs," 90 Fed. Reg. 42,683 (Aug. 28, 2025) ("EO 14343"). EO 14343 is a follow-up to earlier Executive Order 14251, 90 Fed. Reg. 14,553 (Mar. 27, 2025), which stripped collective bargaining rights from civilian employees in over 16 federal agencies on the grounds that, allegedly, such agencies have "national security" as their *primary function*. EO 14343 removes an additional six agencies, including NASA, from coverage by the FSLRMS, despite the fact that NASA does not have national security as its primary function and despite the fact that NASA has been collectively bargaining with federal employee unions for decades.

4.    As set forth herein, EO 14343 and NASA's implementation of EO 14343 are *ultra vires* and unconstitutional under the First and Fifth Amendments. Accordingly, Plaintiff seeks an Order from this Court invalidating EO 14343 and enjoining Defendants from implementing it.

5.    Three other lawsuits are already pending in this Court challenging the same executive order. *See National Weather Service Employees Org. v. Trump,* Case No. 1:25-cv-02947 (D.D.C.) (filed Sept. 2, 2025, on behalf of unions representing employees in the National Oceanic and Atmospheric Administration and the U.S. Patent and Trademark Office); *National Treasury Employees Union v. Trump,* Case No. 1:25-cv-02990 (filed Sept. 3, 2025 on behalf of unions representing employees in the Office of the Commissioner for Patents within the United States Patent and Trademark office); *American Federation of State, County, and Municipal Employees, AFL-CIO v. Trump,* Case No. 1:25-cv-3306 (D.D.C.) (filed Sept. 19, 2025, on behalf of unions representing employees in the U.S. Agency for Global Media). Similarly to these other labor

organizations challenging Defendants' unlawful actions, IFPTE challenges defendants and the EO, which exists solely to strip federal employees and their representatives of long-held statutory rights in retaliation for protected First Amendment activity and because they belong to a group disfavored by the Trump Administration.

## JURISDICTION AND VENUE

6.     This Court has jurisdiction under 28 U.S.C. § 1331, as Plaintiff alleges claims arising under federal law including the United States Constitution.

7.     Venue is proper in the District of Columbia pursuant to 28 U.S.C. § 1391 because Plaintiff is headquartered in this District, Defendants reside in this district, and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district.

## PARTIES

8.     Plaintiff International Federation of Professional & Technical Engineers, AFL-CIO (IFPTE) is a national labor organization whose local unions serve as the bargaining representatives for federal employees at multiple agencies, including, as relevant here, the National Aeronautics and Space Administration (NASA). IFPTE brings this action on its own behalf, on behalf of its local unions, and on behalf of its members.

9.     IFPTE local unions have served as bargaining representatives for NASA employees for over 60 years.

10.     Through its local unions, IFPTE represents approximately 6,000 bargaining unit employees at NASA. Specifically, IFPTE Local 9 (NASA Headquarters Professional Association) represents employees at NASA Headquarters in Washington, DC; IFPTE Local 27 (Marshall Engineers and Scientists Association) represents employees at the Marshall Space Flight Center in Huntsville, Alabama; IFPTE Local 28 (Lewis Engineers and Scientists Association) represents employees at the Glenn Research Center in Cleveland, Ohio; IFPTE Local 29 (Goddard Engineers,

Scientists and Technicians Association) represents employees at the Goddard Space Flight Center in Greenbelt, Maryland; and IFPTE Local 30 (Ames Federal Employees Union) represents employees at the Ames Research Center in Moffett Field, California.

11.     Defendant Donald J. Trump has, at all relevant times, been the President of the United States. President Trump is sued in his official capacity.

12.     Defendant Sean Duffy has, at all relevant times, been the Acting Administrator of the National Aeronautics and Space Administration. He also serves as the Secretary of the U.S. Department of Transportation. Secretary Duffy is sued in his official capacity.

## FACTUAL ALLEGATIONS

**Congress Found Collective Bargaining in the Civil Service to Be in the Public Interest**

13.     The Federal Service Labor-Management Relations Statute (FSLMRS), set forth at Chapter 71 of the U.S. Code, was enacted in 1978 "to prescribe certain rights and obligations of the employees of the Federal Government and to establish procedures which are designed to meet the special requirements and needs of the Government." 5 U.S.C. § 7101(b).

14.     In enacting the FSLMRS, Congress provided that: "the statutory protection of the right of employees to organize, bargain collectively, and participate through labor organizations of their own choosing in decisions which affect them—(A) safeguards the public interest, (B) contributes to the effective conduct of public business, and (C) facilitates and encourages the amicable settlements of disputes between employees and their employers involving conditions of employment." 5 U.S.C. § 7101(a)(1).

15.     Congress further provided, in no uncertain terms, that "labor organizations and collective bargaining in the civil service are in the public interest." 5 U.S.C. § 7101(a)(2).

16.     Accordingly, the FSLMRS sets forth a comprehensive framework governing collective bargaining in the federal civil service. For example, the FSLMRS guarantees federal

employees the right to "form, join, or assist any labor organization, or to refrain from such activity: and "to engage in collective bargaining with respect to conditions of employment through representatives chosen by employees." 5 U.S.C. § 7102. The FSLMRS also requires federal agency employers to negotiate in good faith with employees' chosen representatives (i.e., their authorized labor unions) regarding matters affecting employees' terms and conditions of employment. 5 U.S.C. § 7114.

17.    Congress specifically imposed certain statutory restrictions on collective bargaining in the federal sector as a part of the FSLMRS. For example, federal employees have no right to engage in strikes or work stoppages. 5 U.S.C. § 7311. The FSLMRS also limited the scope of any statutory collective bargaining by providing protections to the government of certain management rights, including the rights to "determine the mission, budget, organization, number of employees, and internal security practices of the agency," to "hire, assign, direct, layoff, and retain employees in the agency, or to suspend, remove, reduce in grade or pay, or take other disciplinary action against such employees," and to "assign work…make determinations with respect to contracting out…and determine the personnel by which agency operations shall be conducted." 5 U.S.C. § 7106(a).

### The FSLMRS Applies to All Federal Agencies, With Only Narrow Exceptions for Agencies with the Primary Function of National Security or Intelligence

18.    The FSLMRS applies to all federal agencies, defined as "an Executive agency (including a nonappropriated fund instrumentality described in section 2105(c) of this title and the Veterans' Canteen Service, Department of Veterans Affairs), the Library of Congress, the Government Publishing Office, and the Smithsonian Institution. However, Congress explicitly excluded certain federal agencies from Chapter 71's coverage, namely the Federal Bureau of Investigation, the Central Intelligence Agency, the National Security Agency, the United States

Secret Service, and the United States Secret Service Uniformed Division. 5 U.S.C. § 7103(a)(3).

19.     Congress also granted the President the authority to "issue an order excluding any agency or subdivision thereof from coverage under this chapter if the President determines that: (A) the agency or subdivision has as a primary function intelligence, counterintelligence, investigative, or national security work, ***and*** (B) the provisions of this chapter cannot be applied to that agency or subdivision in a manner consistent with national security requirements and considerations." 5 U.S.C. § 7103(b)(1)(A)-(B) (emphasis added).

20.     Decades of practice demonstrate that the 5 U.S.C. § 7103(b) exclusion is to be applied narrowly.

21.     Indeed, in the 47 years since the enactment of the FSLMRS, Presidents have exercised their authority to exclude certain agencies from Chapter 71 coverage on rare occasions, and only to target agencies with clear responsibility for sensitive intelligence and/or national security work and—for the most part—with no prior history of collective bargaining. *See, e.g.,* Exec. Order 12171, 44 Fed. Reg. 66565 (Nov. 19, 1979) (Exec. Order No. 12,338, 47 Fed. Reg. 1,369 (Jan. 11, 1982); Exec. Order No. 12,410, 48 Fed. Reg. 13,143 (March 28, 1983); Exec. Order No. 12,559, 51 Fed. Reg. 18,761 (May 20, 1986); Exec. Order No. 12,666, 4 Fed. Reg. 1,921 (Jan. 12, 1989); Exec. Order No. 12,671, 4 Fed. Reg. 11,157 (March 14, 1989); Exec. Order No. 12681, 54 Fed. Reg. 28,997 (July 6, 1989); Exec. Order No. 12,693, 54 Fed. Reg. 40,629 (Sept. 29, 1989); Exec. Order No. 13,039, 62 Fed. Reg. 12,529 (March 11, 1997); Exec. Order No. 13,252, 67 Fed. Reg 1,601 (Jan. 7, 2002); Exec. Order No. 13,381, 70 Fed. Reg. 37,953 (June 27, 2005); Exec. Order 13,480, 67 Fed. Reg. 1,601 (Nov. 26, 2008); Exec. Order No. 13,760, 82 Fed. Reg. 5,325 (Jan. 12, 2017); Exec. Order No. 13,869, 84 Fed. Reg. 18,125, (April 24, 2019).

22.     For example, entities excluded by the executive orders identified in Paragraph 21—

generally subdivisions or elements of agencies—include military and intelligence organizations such as the Joint Special Operations Command, The Army Special Operations Command, the Naval Special Warfare Development Group, the Strategic Air Command, the National Drug Intelligence Center; and the National Nuclear Security Administration.

23.    The Federal Labor Relations Authority has cautioned—in the very decision cited by Executive Order 14251—that the exception should be construed narrowly to protect federal employees' "opportunity under the Statute to determine whether or not they wish to be represented . . . and of the opportunity to engage in collective bargaining with respect to conditions of employment," activities which Congress expressly determined "to be 'in the public interest.'" *Dep't of Energy and Nat'l Ass'n of Gov't Emps., Loc. R5-181*,  4 F.L.R.A. 644, 655 (Nov. 12, 1980) (quoting 5 U.S.C. § 7101(a)).

24.    No President has *ever* sought to exclude NASA, or any of Plaintiff's bargaining units at issue in this case, from the protections of Chapter 71. Indeed, NASA has been collectively bargaining with IFPTE local unions for over 60 years, including during many major national security events and wars, and at no time has such bargaining ever been questioned as inconsistent with national security. This is for the simple reason that national security is not NASA's primary function.

**President Trump Has Taken Extraordinary Steps to Strip Most Federal Employees of Collective Bargaining Rights Under the Pretext of National Security**

25.    On March 27, 2025, President Trump issued Executive Order No. 14251, Exclusions from Federal Labor-Management Programs, 90 Fed. Reg. 14,553 (March 27, 2025) ("EO 14251"), thereby depriving most federal civil service workers of their rights under Chapter 71 by excluding them from its protections, on alleged national security grounds. EO 14251 applied to thousands of employees represented by IFPTE in varying federal agencies.

26.     Despite the extreme overbreadth of EO 14251, including at least 16 different agencies and subdivisions and representing about 75% of the federal government's unionized workforce, *see AFL-CIO v. Donald J. Trump*, No: 1:25-cv-2445 (D.D.C. July 29, 2025), Dkt. 1 (Complaint ¶ 43), certain agencies and job positions were ***not*** excluded from coverage under the executive order. Most notably, despite the alleged need to create new, widespread exclusions on national security grounds, EO 14251 explicitly does not apply to law enforcement agencies. *See* The White House, "Fact Sheet: President Donald J. Trump Exempts Agencies with National Security Missions from Federal Collective Bargaining Requirements" (March 27, 2025), *available at* https://perma.cc/5M2GMUSH.

27.     Moreover, NASA was not covered by EO 14251. As such, even despite unprecedented executive action to strip federal employees of collective bargaining rights, NASA employees—including those in Plaintiff's bargaining units—nevertheless retained their rights and continued to be covered by the rights and protections of the FSLMRS.

**IFPTE Has Repeatedly Challenged the Actions of the Trump Administration**

28.     On March 27, 2025, immediately following the issuance of EO 14251, IFPTE President Matt Biggs released a statement strongly condemning the President's actions and publicly making personal criticisms of the President's experience. IFPTE, "Statements by IFPTE President Matt Biggs and IFPTE Secretary-Treasurer Gay Henson on President Trump's Executive Order Ending Collective Bargaining for Federal Agencies" (March 27, 2025), *available at* https://www.ifpte.org/news/statements-by-ifpte-president-matt-biggs-and-ifpte-secretary-treasurer-gay-henson-on-president-trumps-executive-order-ending-collective-bargaining-for-federal-agencies.

29.     Specifically, President Biggs stated in his March 27, 2025, press release:

*The Trump administration which has proven itself to be in violation of security protocols this week with the Signal/Houthi scandal has the gall to cite national security as the reason for their clearly illegal attempt to eliminate collective bargaining rights for hundreds of thousands of federal workers, including thousands of IFPTE members, many of whom are veterans, unlike the President.*

Our union was formed in in U.S. Navy's shipyards around the time of World War I and since then, every day, for more than a century, our members who are employed by the Department of Defense, The Department of Justice and other federal agencies have worked tirelessly to defend this nation.

*There is little doubt that this insulting and rogue action is in response to successful efforts by IFPTE and other federal unions to block illegal executive orders and other misguided directives this administration has employed to dismantle or degrade federal services.*

President Trump has proven that workers in the federal sector who have been constantly harassed since his taking office on January 20 need union representation more than ever. In the Labor Movement we often say that 'the boss is the best organizer. 'Donald Trump is a damn good union organizer. Our union and others will continue to represent workers through legal efforts, communication, political action and other means. Federal workers who have not yet joined our ranks should do so now.

*Id.* (emphasis supplied).

30.    On May 27, 2025, IFPTE President Matt Biggs held a press conference outside the former location of NASA's Goddard Institute for Space Studies, after the Trump Administration closed that location. President Biggs referred to the closure as, among other things, an "attack on NASA." *See* Space News, "'This Is An Attack on NASA.' Space Agency's Largest Union Speaks out as DOGE Cuts Shutter Science Institute (May 28, 2025), *available at* https://www.space.com/space-exploration/this-is-an-attack-on-nasa-space-agencys-largest-union-speaks-out-as-doge-cuts-shutter-science-institute-located-above-seinfeld-diner-in-nyc.

31.    On June 28, 2025, IFPTE endorsed and publicized a June 30, 2025, protest

organized by citizens concerned about damage being done to NASA by the Trump Administration and referred to the Trump Administration's efforts to "unilaterally dismantle NASA's missions, workforce and to fundamentally diminish the agency" as "illegitimate." IFPTE, "NASA NEEDS HELP! – Protest Against Cuts to NASA on Monday June 30 (June 28, 2025), available at https://www.ifpte.org/news/nasa-needs-help-monday-june-30-at-7-11-am-at-nasa-hq.

32.    On July 29, 2025, IFPTE organized a gathering in front of the National Air and Space Museum, on the anniversary of President Eisnhower's signing of the National Aeronautics and Space Act, to protest the Trump Administration's proposed cuts to NASA's budget and efforts to downsize the Agency's staff. *See* Spectrum News, "Union Leaders Soun the Alarm on NASA Staffing,    Proposed    Budget    Cuts    (July    29,    2025),    available    at https://baynews9.com/fl/tampa/politics/2025/07/29/union-leaders-sound-the-alarm-on-nasa-staffing--proposed-budget-cuts. The National Air and Space Museum is consistently one of the world's most popular museums, with millions of visitors per year.  Smithsonian, "Media Fact Sheet:    National    Air    and    Space    Museum"    (May    29,    2025),    *available    at* https://www.si.edu/newsdesk/factsheets/national-air-and-space-museum.

33.    On August 2, 2025, IFPTE issued a press release with statements from President Biggs and Secretary-Treasurer Henson condemning President Trump's firing of Bureau of Labor Statistics Commissioner Erika McEntarfer after the agency released a report indicating that unemployment rose and that the total number of workers in the U.S. economy has remained flat since April 2025. IFPTE, "Trump Administration's Firing of Bureau of Labor Statistics Head Won't    Alter    the    Reality    that    Workers    Face"    (Aug.    2,    2025),    *available    at* https://www.ifpte.org/news/trump-administrations-firing-of-bureau-of-labor-statistics-head-wont-alter-the-reality-that-workers-face (Aug. 2, 2025).

34.    In that August 2 statement, President Biggs stated:

When asked why he fired the Commissioner of Labor Statistics on the day the agency released its monthly jobs report, President Trump replied, 'Because I think her numbers were wrong. '*If nothing else, the President is blunt about his expectations that taxpayer-funded federal agencies and civil servants who take an oath to serve the public should say and do what he wants them to, not what is factual, lawful, and in the interest of the American people*.

*The BLS report for July comes as no surprise to anyone paying attention to the Trump Administration s efforts to wreck the federal government, gut the dedicated and skilled federal workforce*, start a self-defeating trade war with our ally Canada, attack workers rights in all sectors of the economy, and tear holes in the safety net that provides working people a path to the middle class. *Working Americans are dealing with the consequences of the Trump Administration s anti-worker agenda – they re not living in an alternate reality that the President thinks he can create by hiding those consequences*. Our union is steadfast in standing for our members 'livelihoods and union rights, for economic opportunity, and for an economy that works for working people."

*Id.* (emphasis supplied).

35.    On July 21, 2025, the New York Times reported on a formal letter of dissent submitted to NASA urging the Agency not to issue further cuts to NASA programs and criticizing the Trump Administrator's priorities for the Agency. Although more than 287 current and former NASA employees signed the letter, more than half did so anonymously. However, Monica Gorman—an officer of IFPTE Local 29 (GESTA)—not only signed her name to the letter but was also interviewed and quoted in the article. *See* Kenneth Chang, "Hundreds of NASA Employees, Past and Present, Sign Letter of Formal Dissent," The New York Times (updated Jul. 22, 2025), *available at* https://www.nytimes.com/2025/07/21/science/nasa-formal-dissent-letter-trump.html.

36.    On July 29, 2025, IFPTE, along with numerous other federal employee unions, filed a lawsuit challenging the legality and application of EO 14251 to its members employed in the U.S. Department of Defense. *See AFL-CIO, et al. v. Trump, et al.*, Case No. 1:25-cv-02445 (D.D.C.

July 29, 2025); *see also Am. Fed'n of Gov't Emps. v. Trump*, Case. No. 3:25-cv-3070 (N.D. Cal. Apr. 3, 2025); *Nat'l Treasury Emps. Union v. Trump*, Case No. 1:25-cv-935 (D.D.C. Mar. 31, 2025).

37.     IFPTE local union affiliates have also been particularly active in challenging the Administration's actions. For example, since the issuance of EO 14251, IFPTE Local 29 (GESTA), which represents employees at NASA, has filed more than 20 grievances and an unfair labor practice charge against NASA, as well as submitted 17 demands to bargain over substantive changes in working conditions.

### President Trump Unlawfully Revokes NASA Employees 'Collective Bargaining Rights Through Issuance of Executive Order 14343

38.     On August 28, 2025, the Friday before Labor Day, President Trump issued Executive Order 14343, "Further Exclusions From the Federal-Labor Management Relations Program" ("EO 14343"). 90 Fed. Reg. 42,683. EO 14343 exempts six agencies from the coverage of the FSLMRS, including NASA. The Executive Order parrots the language of the FSLMRS in attempting to justify the exclusions, stating that the agencies identified "are hereby determined to have as a primary function intelligence, counterintelligence, investigative, or national security work. It is also hereby determined that Chapter 71 of title 5, United States Code, cannot be applied to these agencies and agency subdivisions in a manner consistent with national security requirements and considerations." *Id.*

39.     The White House simultaneously issued a "Fact Sheet" to accompany EO 14343. *See* "Fact Sheet: President Donald J. Trump Exempts Agencies With National Security Missions from Federal Collective Bargaining Requirements" (Aug. 28, 2025), *available at* https://www.whitehouse.gov/fact-sheets/2025/08/fact-sheet-president-donald-j-trump-exempts-agencies-with-national-security-missions-from-federal-collective-bargaining-requirements-

6a95/. The Fact Sheet claims that NASA allegedly has a "national security mission" because "NASA develops and operates advanced air and space technologies, like satellite, communications, and propulsions systems, that are critical for U.S. national security." *Id.*

40.     The Fact Sheet further describes the purpose in issuing EO 14343, providing that the President believes collective bargaining with federal employees "limit[s] agencies' ability to modify policies promptly" and that mid-term bargaining "can delay the implementation of time-sensitive national security measures." *Id.* In other words, the Fact Sheet transparently declares that the motivation behind the EO is to prevent federal employee unions from performing representative activities of any kind.

41.     However, NASA's ***primary function*** is not national security. Indeed, NASA's mission—per NASA's own website—is to "explore[] the unknown in air and space, innovate[] for the benefit of humanity, and inspire[] the world through discovery." NASA, "About NASA," *available at* https://www.nasa.gov/about/ (last accessed Sept. 22, 2025).

42.     NASA's website further explains that "[a]t its 20 centers and facilities across the country and with U.S. commercial companies and international partners, NASA leads studying Earth science, including climate, our Sun, solar system, and the larger universe. We conduct cutting-edge research to advance technology and aeronautics. We operate the world's leading space laboratory, the International Space Station, and will establish a sustainable and strong exploration presence on the Moon this decade through the Artemis campaign." *Id.*

43.     Put simply, the primary function of NASA is ***science for the benefit of all humanity.*** It is not about national security or defense of the United States.

44.     Indeed, the National Aeronautics and Space Act, which was first enacted in 1958 and amended in most recently in 2017, established and created NASA and provides specifically

that "it is the policy of the United States that activities in space should be devoted to *peaceful purposes for the benefit of all humankind*." 51 U.S.C. § 20102(a) (emphasis supplied). The Act further sets forth a list of objectives of the aeronautical and space activities of the United States, including "the expansion of human knowledge of the Earth and of phenomena in the atmosphere and space," "the establishment of long-range studies of the potential benefits to be gained from, the opportunities for, and the problems involved in the utilization of aeronautical and space activities *for peaceful and scientific purposes*" (emphasis supplied), "[t]he preservation of the role of the United States as a leader in aeronautical and space science and technology and in the application therefore *to the conduct of peaceful activities within and outside the atmosphere"* (emphasis supplied), and "[t]he search for life's origin, evolution, distribution, and future in the universe." 51 U.S.C. § 20102(d).

45.    Significantly, not only is NASA's mission unrelated to national security, the National Aeronautics and Space Act *clearly* removes primary national security and defense functions from NASA, stating that: "activities peculiar to or primarily associated with development of weapons systems, military operations, *or the defense of the United States (including the research and development necessary to make effective provision for the defense of the United States) shall be the responsibility of, and shall by directed by the Department of Defense.*" 51 U.S.C. § 20102(b) (emphasis supplied).

46.    Further, it is also evident that NASA does not have the primary function of national security, as another agency—the United States Space Force—was recently established for the exact and specific purpose of furthering and ensuring national security in space. The Space Force is a military agency established by President Trump in 2019, arising from "widespread recognition that space is a national security imperative. When combined with the growing threat posed by

strategic competitors in space, it became clear that there was a need for a military service focused solely on pursuing superiority in the space domain." UNITED STATES SPACE FORCE, "About Us," *available at* https://www.spaceforce.mil/About-Us/ (last accessed Sept. 22, 2025). The Space Force website further notes that the agency "consolidates satellite acquisition, budget and workforce from across more than 60 different organizations into a unified, efficient, effective service for space operations." *Id.* Notably, NASA is not a part of the U.S. Space Force, which is housed under the umbrella of the U.S. Department of Defense.

47.    Moreover, the Trump Administration has provided only generalized, undifferentiated, and conclusory assertions in support of its determination that Chapter 71 cannot be applied to NSA in a manner consistent with national security.

48.    IFPTE's President issued a strong statement following the issuance of EO 14343 making clear that IFPTE will not back down from challenging the Administration's efforts to gut the FSLRMS and strip long-held and protected rights from federal workers. President Biggs stated:

> It is obviously disappointing that the Trump Administration continues to attack federal workers and their Unions. It is particularly upsetting that this administration has done so on the eve of Labor Day, a federal holiday intended to honor and thank workers. Make no mistake, the Trump Administration has doubled down on being the most anti-labor, anti-worker administration in United States history. ***Today s Executive Order seeks to deny bargaining rights at NASA on a bogus national security rationale, despite long-established Unions and bargaining rights for NASA civil servants that extend back to the 1960s. As we have been doing since March 27th when his original Union-busting order was issued, IFPTE will continue to fight against these attacks in the courts, on Capitol Hill, and at the grassroots level.***

*See* IFPTE, "IFPTE Condemns Trump Administration's Latest Attack on Federal Workers and Their Unions," (Aug. 28, 2025), *available at* https://www.ifpte.org/news/ifpte-condemns-trump-administrations-latest-attack-on-federal-workers-and-their-unions (Aug. 28, 2025) (emphasis

supplied)

49.      Secretary-Treasurer Gay Henson also issued a statement in the wake of EO 14343,

stating that IFPTE will not be intimidated into submission:

> Any attack on workers is unacceptable, including this latest one from the Administration.  Given that IFPTE is NASA's largest federal employee union, this is particularly damaging to IFPTE's NASA Locals and members, as well as our members 'work on groundbreaking NASA missions that provide immense scientific value and advance aeronautics and space exploration.  ***Rest assured, our Locals will continue to exist and continue to represent their membership, despite these illegal orders.***

*Id.* (emphasis supplied).

### EO 14343 Has Caused and Will Continue to Cause
### Irreparable Harm to Plaintiff and Its Members

50.      Each of Plaintiff's local affiliate unions representing NASA employees has entered

into a collective bargaining agreement ("CBA") with NASA. These CBAs are valid, bilateral

contracts which were entered into prior to the issuance of EO 14343 and have not yet expired.

51.      Plaintiff's members have and will continue to be harmed by EO 14343 and the

President's unlawful actions. Indeed, on September 11, 2025, NASA swiftly moved to implement

the Executive Order and has issued memoranda to each of Plaintiff's member local unions. On that

date and thereafter, NASA and Defendant Duffy have "implemented" EO 14343 within the

Agency, including by:

●      "No longer recognizing the International Federation of Professional & Technical

Engineers (IFPTE)…as exclusive representatives for any group of NASA employees;"

●      "The termination, abrogation, or repudiation of collective bargaining agreements

(CBAs) with labor unions;"

●      "Stopping NASA's collection of union dues on behalf of labor unions;"

- "Ceasing the processing of existing grievances filed under collective bargaining agreements;"

- "Withdrawing from any scheduled arbitrations and disregarding any newly filed grievances;"

- "Ceasing and withdrawing from any current negotiations with labor unions;"

- Reclaiming space and equipment used for Union offices or activities;

- Prohibiting the use of "official time;"[1]

- "Informing the Federal Labor Relation Authority (FLRA) that NASA unions no longer have standing to file a charge or to ask the FLRA to issue a complaint;" and

- "Ceasing union representatives' participation in formal discussions and Weingarten meetings."

52.     By excluding IFPTE's members at NASA from coverage under Chapter 71, the government has stripped numerous statutory rights from IFPTE, including the right to be present at formal discussions about grievances or in disciplinary interviews, 5 U.S.C. § 7114(a)(2), and to negotiate with agencies to reach binding Collective Bargaining Agreements, *id.* § 7114(b). This diminishes IFPTE's bargaining power and ability to carry out its representative duties.

53.     Because the government has excluded IFPTE's members at NASA from coverage under Chapter 71, these members' statutory protections guaranteeing voluntary payroll deductions of dues, *see* 5 U.S.C. § 7115, are no longer in effect.

54.     The vast majority of IFPTE's members' dues are paid through voluntary payroll deduction. The cessation of these dues will cause IFPTE to lose revenue that is used to further its

---

[1] "Official time," referred to by the Agency as "taxpayer-funded union time," is on-the-clock time that union officials use for representative purposes that is statutory protected under 5 U.S.C. § 7131.

mission and representational activities.

55.     This revenue cannot be replaced by individual dues payments from members: it is the Union's experience that logistical hurdles to dues collection lead to unpaid dues, even from members who desire to pay their dues.

56.     Nor can money damages ultimately make up for these unpaid and uncollected dues: IFPTE and its locals require dues income to conduct their representational activities. With fewer dues being collected, IFPTE and its local unions will not be able to as effectively conduct their representational activities. Such lost opportunities and the harms flowing from them will not be redressed through money damages.

57.     This is especially true because IFPTE and its local union affiliates must expend additional resources on efforts to counteract the increased harms caused by the EO 14343.

## CLAIMS FOR RELIEF

## COUNT ONE

### *Ultra Vires Action in Violation of Statute (Against All Defendants)*

58.     Plaintiff reasserts and incorporates by reference all allegations set forth in Paragraphs 1 through 57 as if fully set forth herein.

59.     The President's authority to act "must stem from either an act of Congress or from the Constitution itself." *Youngstown Sheet & Tube Co. v. Sawyer,* 343 U.S. 579, 585 (1952). As such, Courts have authority to enjoin and declare unlawful official action that is *ultra vires,* i.e., outside the scope of the Government's authority.

60.     Under 5 U.S.C. § 7103(b)(1), the President may exclude an "agency or subdivision" from the protections of Chapter 71 only if two conditions are met: (1) "the agency or subdivision has as a primary function intelligence, counterintelligence, investigative, or national security

work," *and* (2) "the provisions of [Chapter 71] cannot be applied to that agency or subdivision in a manner consistent with national security requirements or considerations."

61.     Despite superficially parroting language from the statute, EO 14343 disregards the specific requirements of 5 U.S.C. § 7103(b) and exceeds the authority granted to the President.

62.     The first requirement of Section 7103(b) of the FSLMRS—that the agency has as a primary function…national security"—is not met here, as NASA's primary function is the pursuit of scientific knowledge and exploration for peaceful purposes, for the benefit of all humanity.

63.     With respect to the second requirement of Section 7103(b) of the FSLMRS, it is clear that EO 14343 was not based on a determination that "the provisions of [Chapter 71]" cannot be applied to [NASA] in a manner consistent with national security requirements and considerations," as five separate civilian bargaining units have been represented by Plaintiff IFPTE and its local affiliates for over 60 years, have continually entered into collective bargaining contracts throughout that time, and have not experienced any "interference" with national security requirements or considerations.

64.     Because EO 14343 goes beyond the narrow authority granted to the President under Section 7103(b) and thereby impermissibly effectuates a partial repeal of Chapter 71, the EO 14343 is *ultra vires* and violates the Constitution's separation of executive from legislative powers.

65.     Similarly, the actions of Defendant Duffy in terminating collective bargaining agreements between Plaintiff's local affiliate unions and NASA and refusing to participate in the collective bargaining process are also *ultra vires,* as they rely on and enforce an illegally issued and invalid executive order.

66.     Moreover, Chapter 71 exists to create a "statutory Federal labor-management

19

program which cannot be universally altered by any President," 124 Cong. Rec. H9637 (daily ed. Sept. 13, 1978) (statement of Rep. Clay), and the purpose of Chapter 71 is to facilitate and strengthen collective bargaining in the federal sector, *see Bureau of Alcohol, Tobacco, and Firearms v. FLRA*, 464 U.S. 89, 107 (1983); 5 U.S.C. § 7101(a) (finding and codifying that collective bargaining is in the public interest). The President's attempts to unilaterally exclude the majority of the federal workforce from collective bargaining conflict with the statute.

## COUNT TWO

### *Violation of the First Amendment (Against All Defendants)*

67.    Plaintiff reasserts and incorporates by reference all allegations set forth in Paragraphs 1 through 57 as if fully set forth herein.

68.    The First Amendment to the U.S. Constitution guarantees citizens the rights to freedom of speech, association, and to petition the Government for redress of grievances. U.S. Const. amend. I.

69.    EO 14343 was issued in retaliation for IFPTE's protected speech and petitioning activities, including among other things, participating in a lawsuit to challenge EO 14251 and making public statements strongly condemning the President's actions. EO 14343 aims to chill such protected speech and petitioning activity not just by Plaintiff, but by all federal unions. Indeed, as the OPM guidance makes clear, EO 14343 is intended as a supplement to EO 14251, which was patently issued for the purpose of targeting labor organizations that stand up to President Trump. *See* The White House, "Fact Sheet: President Donald J. Trump Exempts Agencies with National Security Missions from Federal Collective Bargaining Requirements" (March 27, 2025), available at https://perma.cc/5M2GMUSH (claiming that "[c]ertain Federal unions have declared war on President Trump's agenda," and taking umbrage with union

statements that it is "fighting back" against President Trump).

70.    Plaintiff IFPTE and its affiliated local unions have exercised their First Amendment rights to criticize the actions of the Trump Administration and to petition the government by filing lawsuits to challenge these policies. Such First Amendment activity is a core part of our democratic system, memorialized in this Country's founding documents.

71.    By issuing EO 14343 in retaliation for IFPTE's protected activity and for the purposes of chilling the rights of labor organizations more broadly, President Trump has violated the First Amendment. Defendant Duffy and NASA's implementation of EO 14343 share in the unlawful executive order's retaliatory purpose and effects, so such actions also violate the First Amendment.

## COUNT THREE

### *Violation of the Fifth Amendment s Takings Clause (Against All Defendants)*

72.    Plaintiff reasserts and incorporates by reference all allegations set forth in Paragraphs 1 through 57 as if fully set forth herein.

73.    The Fifth Amendment to the U.S. Constitution protects against deprivations of property "without due process of law," and that private property shall not "be taken for public use, without just compensation." U.S. Const. amend. V.

74.    Because collective bargaining agreements entered into pursuant to the FSLMRS are contracts that bind federal agencies and labor organizations representing the agencies' employees, such contracts are considered property protected by the Fifth Amendment's Takings Clause. *See Lynch v. United States,* 292 U.S. 571, 579 (1934).

75.    The Due Process Clause of the Fifth Amendment also protects against the government's retroactive abrogation of its contracts absent exercise of "federal police power or

some other paramount power." *Id.*

76.     Plaintiffs' local affiliates—specifically, Locals 9, 27, 28, 29, and 30—have entered into binding, bilateral collective bargaining agreements with NASA. These collective bargaining agreements do not interfere in any way with national security, as evidenced by the fact that they were in effect prior to the issuance of EO 14343.

77.     EO 14343, and the subsequent actions by Defendant Duffy in implementing EO 14343 at NASA, seek to nullify existing collective bargaining agreements and extinguish vested rights under them, including those which predate EO 14343. Such actions deprive Plaintiff IFPTE and its members of vested rights under such collective bargaining agreements and, thus, their constitutionally protected property interests in such collective bargaining agreements, without any rational justification or legitimate public purpose. Accordingly, they constitute unlawful takings in violation of the Fifth Amendment.

## COUNT FOUR

### *Violation of the Fifth Amendment s Equal Protection Clause (Against All Defendants)*

78.     Plaintiff reasserts and incorporated by reference all allegations set forth in Paragraphs 1 through 57 as if fully set forth herein.

79.     The Fifth Amendment to the U.S. Constitution includes a guarantee of equal protection of the laws. *United States v. Windsor*, 570 U.S.  744, 769-70 (2013); *Bolling v. Sharpe*, 347 U.S. 497, 499 (1954).

80.     "The Constitution's guarantee of equality 'must at the very least mean that a bare . . . desire to harm a politically unpopular group cannot' justify disparate treatment of that group." *Windsor,* 570 U.S. at 770 (quoting *Dep't of Agriculture v. Moreno*, 413 U.S. 528, 534–35 (1973)).

81.     A "bare . . . desire to harm a political unpopular group" is precisely the motivation

behind EO 14343. While EO 14251 already excluded almost 75% of unionized federal workers from coverage by the FSLMRS, EO 14343 expands the Defendants' efforts to dismantle federal unions—specifically those that speak out against the Administration—by excluding six additional agencies, including NASA, from the statute's coverage. However, certain employees, most notably law enforcement employees, are wholly excluded from either executive order and continue to maintain collective bargaining rights. Indeed, the White House's own statements transparently reveal that the executive orders are targeting labor unions that refuse to kowtow to the Administration (i.e., in the President's view, causing "mass obstruction") and have petitioned the government for redress, while the Administration will maintain "constructive partnerships with unions who work with him." *See* The White House, "Fact Sheet: President Donald J. Trump Exempts Agencies with National Security Missions from Federal Collective Bargaining Requirements" (March 27, 2025), available at https://perma.cc/5M2GMUSH.

## COUNT FIVE

### *Violation of the Fifth Amendment s Right to Procedural Due Process (Against All Defendants)*

82.    Plaintiff reasserts and incorporates by reference all allegations set forth in Paragraphs 1 through 57 as if fully set forth herein.

83.    The Fifth Amendment's protection against deprivations of property "without due process of law" requires, at a minimum, notice and an opportunity to be heard before the government may deprive a person of property.

84.    "Valid contracts are property, whether the obligor be a private individual, a municipality, a state, or the United States. Rights against the United States arising out of a contract with it are protected by the Fifth Amendment." *Lynch*, 292 U.S. at 579.

85.    EO 14343 and NASA's implementation of EO 14343 seek to retroactively nullify

collective bargaining agreements and extinguish pending grievances over actions predating EO 14343, as well as any grievances that might be filed after August 28, 2025. These actions deprive Plaintiff and its members of their constitutionally protected property interests in collective bargaining agreements lawfully entered into with NASA, and they do so without having afforded Plaintiff any notice or opportunity to be heard. This violates the Fifth Amendment's guarantee of procedural due process. *See Ralls Corp. v. Comm. on Foreign Inv. in U.S.*, 758 F.3d 296, 318 (D.C. Cir. 2014).

## COUNT SIX

### *Violation of the Administrative Procedure Act (Against Defendant Duffy Only)*

86.     Plaintiff reasserts and incorporates by reference all allegations set forth in Paragraphs 1 through 57 as if fully set forth herein.

87.     Under the Administrative Procedure Act ("APA"), a reviewing court "shall . . . hold unlawful and set aside agency action" that is, *inter alia*, "arbitrary and capricious . . . or otherwise not in accordance with law," "contrary to a constitutional right," and "in excess of statutory jurisdiction, authority, or limitations" 5 U.S.C. § 706(2)(A)-(C).

88.     On or around September 11, 2025, and thereafter, NASA and Defendant Duffy have implemented EO 14343, including by taking the actions listed in Paragraph 51. These are final agency actions reviewable under the Administrative Procedure Act.

89.     Each of the subjects of these actions is provided to Plaintiff by Chapter 71 and/or the Parties' CBA pursuant to Chapter 71.

90.     Defendant Duffy has no lawful basis for excluding Plaintiff from Chapter 71, nor for taking these actions.

91.     Despite NASA and IFPTE's fruitful, decades-long collective bargaining

arrangement, Defendant Duffy has provided no reasoned explanation for these actions, nor for why the subjects of these actions are inconsistent with national security requirements and considerations or why NASA has as a primary function national security work.

92.    Defendant Duffy's actions violate well-established principles of law. For example, it is unlawful for NASA to "[c]eas[e] the processing of existing grievances filed under collective bargaining agreements" and "[w]ithdraw[] from any scheduled arbitrations"—as well as to "disregard[] any newly filed grievances," where those newly-filed grievances are based on "facts or occurrences that arose before [cancellation of the CBA]." *See Nolde Brothers, Inc. v. Local No. 358*, 430 U.S. 243, 245-48 (1977); *Litton Financial Printing v. NLRB*, 501 U.S. 190, 205-06 (1991).

93.    Defendant Duffy's actions violate Chapter 71 and the Constitution, and are otherwise unlawful, arbitrary and capricious, and outside of his authority.

## PRAYER FOR RELIEF

Wherefore Plaintiff IFPTE prays for the following relief:

(a)    A declaratory judgment that EO 14343, NASA's implementation of EO 14343, and Defendants' nullification of Plaintiff's statutory and contractual rights, are *ultra vires*, in violation of the First Amendment's protection of speech and petitioning activities, in violation of the Fifth Amendment's guarantee of equal protection of the laws, and in violation of the Fifth Amendment's protection against unlawful takings and its guarantee of substantive due process;

(b)    A declaratory judgment that the actions taken by Defendant Duffy to implement EO 14343, and to nullify Plaintiff's statutory and contractual rights, are in violation of the Administrative Procedure Act;

(c)    Permanent injunctive relief that prohibits the Defendants and their agents and

successors from implementing or otherwise giving effect to EO 14343 with respect to Plaintiff and

its members;

 (d) An order granting Plaintiffs their attorney's fees and costs; and

 (e) An order granting such other relief as this Court may deem just and proper.

Dated: October 8, 2025    Respectfully submitted,

          */s/ Gregory K. McGillivary*
          Gregory McGillivary (D.C. Bar No. 411029)
          Sarah M. Block (D.C. Bar No. 1026577)
          Patrick Miller-Bartley (D.C. Bar No. 1780520)
          McGILLIVARY STEELE ELKIN LLP
          1101 Vermont Ave. NW
          Suite 1000
          Washington, DC 20005
          (202) 833-8855
          gkm@mselaborlaw.com
          smb@mselaborlaw.com
          pmb@mselaborlaw.com

          */s/ Teresa Ellis*
          Teresa Ellis (D.C. Bar No. 495855)
          General Counsel
          International Federation of Professional &
          Technical Engineers, AFL-CIO
          513 C Street N.E.
          Washington, D.C. 20002
          (202) 239-4880
          tellis@ifpte.org

          *Attorneys for Plaintiff IFPTE*