**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| INTERNATIONAL FEDERATION OF PROFESSIONAL AND TECHNICAL ENGINEERS, AFL-CIO,<br><br>    *Plaintiff,*<br><br>v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States, et al.,<br><br>    *Defendants.* | Case No. 1:25-cv-03615<br><br>[PROPOSED] PLAINTIFF-INTERVENOR GODDARD ENGINEERS, SCIENTISTS AND TECHNICIANS ASSOCIATION/IFPTE LOCAL 29 |

**EMERGENCY MOTION TO INTERVENE, TO MODIFY THE STAY, AND FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**

Proposed Plaintiff-Intervenor, Goddard Engineers, Scientists and Technicians Association/IFPTE Local 29 ("GESTA" or "Local 29"), respectfully moves under Federal Rule of Civil Procedure 24(a)(2), and alternatively Rule 24(b), to intervene in this action for the limited purpose of seeking emergency preservation relief. GESTA further moves to modify the Court's stay for that limited purpose and, under Rule 65, for a temporary restraining order and preliminary injunction preserving the status quo of NASA's Goddard Information and Collaboration Center in Greenbelt, Maryland (the "Goddard Library") pending resolution of whether Executive Order 14343 lawfully applies to NASA and lawfully permits NASA to repudiate or disregard GESTA's 2012 Settlement Agreement with NASA's Goddard Space Flight Center ("GSFC").

Pursuant to Rule 24(c), GESTA submits with this motion a proposed complaint-in-intervention setting out the claims and relief for which intervention is sought.

## INTRODUCTION

This motion concerns a narrow, concrete, and time-sensitive consequence of NASA's implementation of Executive Order 14343. GESTA is an IFPTE local representing bargaining-unit employees at GSFC. (GESTA Decl. ¶ 1). In 2012, GESTA resolved an unfair-labor-practice dispute with GSFC through a settlement agreement in which GSFC committed, among other things, to maintain a physical library at GSFC (the "2012 Settlement Agreement"). (GESTA Decl. Ex. A).

NASA now treats the 2012 Settlement Agreement as no longer restraining its management choices because EO 14343 purported to exclude all of NASA from the Federal Service Labor-Management Relations Statute. Relying on this premise, NASA closed the Goddard Library, completed a rapid assessment of the collection, and prepared thousands of boxes for transfer to NASA's Glenn Research Center and the General Services Administration for disposition. In *Williams et al. v. NASA et al.*, No. 1:26-cv-00564, Judge Cooper recognized this causal sequence: NASA initially did not plan to close the Goddard Library because of the 2012 Settlement Agreement; after EO 14343, GSFC leadership concluded that the 2012 Settlement Agreement no longer restrained NASA; and the Goddard Library space then became available for agency-level planning. See *Williams et al. v. NASA et al.*, No. 1:26-cv-00564, ECF No. 24 at 7-8 (D.D.C. Apr. 29, 2026) (Weil Decl. Ex. A).

This is exactly the type of irreparable EO-implementation harm that warrants limited intervention and emergency preservation relief here. If NASA is permitted to destroy, discard, permanently transfer, disperse, or otherwise irreversibly alter the Goddard Library collection while the legality of EO 14343 remains unresolved, the eventual resolution of this case and

related D.C. Circuit proceedings may come too late to restore meaningful relief. This Court need not decide the entire library dispute, adjudicate Federal Records Act compliance, or supervise NASA's records-management process (the issues addressed in *Williams*); it need only preserve the status quo necessary to prevent NASA from using a challenged Executive Order to permanently defeat a preexisting labor settlement before the lawfulness of that repudiation is decided.

GESTA therefore seeks three forms of limited relief: (1) intervention for the limited purpose of seeking preservation of the Goddard Library and the 2012 Settlement Agreement status quo; (2) modification of the stay for the limited purpose of adjudicating this emergency request; and (3) a TRO and preliminary injunction preventing the NASA Administrator, NASA officers, agents, servants, employees, subordinates, successors, and all persons acting in concert or participation with him from relying on EO 14343, OPM guidance, or asserted derecognition to irreversibly impair the 2012 Settlement Agreement by destroying, shredding, discarding, donating, excessing, transferring to GSA, transferring outside NASA custody, or otherwise disposing of materials formerly housed in the Goddard Library. Any intra-NASA movement or storage of such materials shall preserve existing inventory, provenance, chain-of-custody, location information, and restoration capacity sufficient to permit meaningful relief if EO 14343 is held unlawful as applied to NASA or if the 2012 Settlement Agreement is determined to remain enforceable.

## BACKGROUND

GESTA is IFPTE Local 29 and represents federal employees at GSFC. (GESTA Decl. ¶ 1). In 2012, GESTA and GSFC resolved a labor dispute through the 2012 Settlement Agreement concerning the Goddard Library (id. Ex. A). Among other things, GSFC leadership agreed to

keep open the Goddard Library's physical location at GSFC in Greenbelt, Maryland. (Id.). The 2012 Settlement Agreement was not an abstract bargaining preference; it resolved a dispute over a concrete workplace resource and governed the continued availability of the Goddard Library to GSFC employees.

On August 28, 2025, President Trump issued EO 14343, titled Further Exclusions from the Federal Labor-Management Relations Program. The Order amended Executive Order 12171 to include NASA among agencies excluded from Chapter 71 of Title 5. NASA then treated the 2012 Settlement Agreement as no longer constraining agency action concerning the Goddard Library. See *Williams,* ECF No. 24 at 7-8.

In January 2026, NASA closed the Goddard Library, initiated a 60-day assessment of the library collection, and sorted the collection into categories for retention, transfer, further review, or disposition. *Id*. NASA represented in *Williams* that approximately 2,520 boxes were prepared for shipment to NASA's Glenn Research Center and approximately 3,396 boxes were prepared for GSA disposition. *Id.* at 9-10. At the initial scheduling conference in *Williams*, the government represented that at least some materials would be shipped to GSA for destruction; NASA later agreed to pause shipments to GSA only until at least April 30, 2026. *Id*. at 9 n.4, 11-12.

GESTA and other plaintiffs sought emergency relief in *Williams* under APA and Federal Records Act theories. Judge Cooper denied preliminary relief, concluding that the *Williams* plaintiffs had not made the required showing under the particular theories and record presented there. *Id*. Importantly, however, the Court did not decide the validity of EO 14343 as applied to NASA, did not decide whether the 2012 Settlement Agreement remains enforceable, and did not

decide whether NASA lawfully relied on EO 14343 to repudiate GESTA's settlement rights. See *Id.* at 16 n.8.

The emergency now before this Court is distinct. GESTA does not ask this Court to review day-to-day records management or to reconsider Judge Cooper's decision in *Williams*. GESTA asks only to preserve the practical ability to obtain meaningful relief if EO 14343 is held unlawful as applied to NASA and if NASA therefore lacked authority to disregard the 2012 Settlement Agreement.

## LEGAL STANDARD

Rule 24(a)(2) requires intervention as of right when, on timely motion, the proposed intervenor claims an interest relating to the property or transaction that is the subject of the action, disposition of the action may impair or impede the movant's ability to protect that interest, and existing parties may not adequately represent that interest. Fed. R. Civ. P. 24(a)(2). The D.C. Circuit construes Rule 24 in favor of intervention where the requirements are satisfied. See *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 731-35 (D.C. Cir. 2003); *Crossroads Grassroots Policy Strategies v. FEC*, 788 F.3d 312, 320-21 (D.C. Cir. 2015). Alternatively, Rule 24(b) permits intervention where the movant has a claim or defense sharing a common question of law or fact with the main action. Fed. R. Civ. P. 24(b)(1)(B).

A district court also has inherent authority to control its docket, including authority to stay proceedings and to modify a stay when justice so requires. See *Landis v. N. Am. Co.*, 299 U.S. 248, 254-55 (1936). A stay should not operate to permit irreversible harm that would defeat the purpose of the stayed litigation.

Temporary restraining orders and preliminary injunctions are governed by the familiar four-factor test: likelihood of success on the merits, likelihood of irreparable harm absent relief, balance of equities, and public interest. *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008).

When the government is the opposing party, the balance-of-equities and public-interest factors merge. *Nken v. Holder*, 556 U.S. 418, 435 (2009).

## ARGUMENT

### I. GESTA Has Article III Standing to Seek Limited Preservation Relief.

GESTA has Article III standing because NASA's implementation of EO 14343 has caused, and imminently threatens to cause, concrete injury to GESTA's legally protected interests in the 2012 Settlement Agreement. See *Town of Chester v. Laroe Estates, Inc.*, 581 U.S. 433, 439–40 (2017) (an intervenor of right must demonstrate Article III standing when it seeks relief different from or beyond that sought by an existing party).

First, GESTA has suffered an injury in fact. GESTA is a party to the 2012 Settlement Agreement with GSFC, which resolved a labor dispute concerning the continued operation of the Goddard Library as a physical workplace resource for bargaining-unit employees. NASA now treats this agreement as no longer restraining its management choices because EO 14343 purported to remove NASA from Chapter 71 of Title 5. That position injures GESTA's settlement-agreement rights and representational interests. It also threatens imminent practical injury: NASA has closed the Goddard Library, completed a rapid assessment of the collection, and prepared thousands of boxes for transfer or disposition. If NASA destroys, discards, transfers outside NASA custody, disperses, or otherwise irreversibly alters the collection before EO 14343's validity is resolved, GESTA's ability to obtain meaningful relief under the 2012 Settlement Agreement will be permanently impaired.

Second, GESTA's injury is fairly traceable to Defendants' challenged conduct. The causal chain is direct. NASA initially did not plan to close the Goddard Library because of the 2012 Settlement Agreement. See *Williams,* ECF No. 24. After EO 14343, GSFC leadership concluded that the agreement no longer restrained NASA's management choices, and NASA

then treated the Goddard Library space and collection as available for closure, transfer, and disposition. *Id.* Thus, the threatened loss of the settlement-protected library is traceable to NASA's implementation of EO 14343 and its EO-based repudiation of the 2012 Settlement Agreement.

Third, GESTA's injury is redressable by the limited relief requested here. A temporary restraining order and preliminary injunction preserving the Goddard Library collection, provenance, chain-of-custody, location information, and restoration capacity would prevent NASA from irreversibly defeating the practical value of the 2012 Settlement Agreement while the legality of EO 14343 as applied to NASA is adjudicated. This relief would not require the Court to decide the full merits of the library dispute now. It would preserve meaningful final relief if EO 14343 is held unlawful as applied to NASA or if NASA is otherwise found to have lacked authority to disregard the 2012 Settlement Agreement.

Because GESTA seeks limited relief to protect its own settlement-agreement and representational interests, and because those interests are distinct from the broader institutional interests asserted by IFPTE, GESTA satisfies Article III's injury, traceability, and redressability requirements.

## II. GESTA Should Be Permitted to Intervene for the Limited Purpose of Seeking Emergency Preservation Relief.

GESTA satisfies Rule 24(a)(2). First, this motion is timely. The need for intervention became urgent when NASA relied on EO 14343 to treat the 2012 Settlement Agreement as no longer restraining management choices concerning the Goddard Library, and when Judge Cooper denied preliminary relief in *Williams* without deciding the EO/labor-agreement question. NASA's pause on GSA shipments was scheduled to last only until at least April 30, 2026, creating immediate risk that irreversible steps may resume.

Second, GESTA has a direct and legally protected interest. It is the local union of IFPTE that entered into the 2012 Settlement Agreement with GSFC. (See GESTA Decl. ¶ 1). This agreement is the specific labor instrument NASA now says no longer restrains agency action because of EO 14343. The interest is not generalized disagreement with federal labor policy; it is a concrete settlement-agreement interest tied to a defined workplace resource and a specific NASA implementation decision.

Third, disposition of this action without preservation relief will almost certainly impair GESTA's ability to protect that interest. If the Goddard Library collection is destroyed, discarded, transferred outside NASA custody, dispersed, or stripped of provenance before the validity of EO 14343 is resolved, GESTA's ability to obtain meaningful relief under the 2012 Settlement Agreement will be practically impaired. A later declaration that EO 14343 was unlawful as applied to NASA would be cold comfort if the settlement-protected resource has already been dismantled beyond restoration.

Fourth, existing parties may not adequately represent GESTA's specific interest. IFPTE's broader case challenges EO 14343 as applied to NASA and seeks relief for federal labor rights across the NASA workforce. GESTA's proposed intervention is narrower: preservation of a local settlement-agreement interest concerning the Goddard Library. The burden to show inadequate representation is minimal; it is enough that representation of the movant's interest may be inadequate. *Fund for Animals*, 322 F.3d at 735. This standard is met.

Alternatively, permissive intervention is warranted under Rule 24(b). GESTA's claim shares common questions with the main action, including whether EO 14343 lawfully excludes NASA from Chapter 71 and whether NASA may implement the EO by terminating or disregarding collective-bargaining and settlement obligations. Limited intervention will not

unduly delay or prejudice the adjudication of the original parties' rights; to the contrary, it will present a narrow, concrete preservation issue arising directly from NASA's challenged implementation of EO 14343.

### III. The Court Should Modify the Stay for the Limited Purpose of Considering Emergency Preservation Relief.

This case is stayed pending resolution of related D.C. Circuit proceedings concerning EO 14251 and EO 14343. GESTA does not seek to disturb that stay generally. It asks only for a limited modification so the Court can prevent irreversible harm while the legality of EO 14343 as applied to NASA remains unresolved.

The requested modification is consistent with the purpose of the stay. A stay entered to await appellate guidance should not allow the government to create irreversible facts on the ground that would defeat the practical value of any later ruling. Here, NASA has identified EO 14343 as the reason the 2012 Settlement Agreement no longer restrains its management choices. If the Court leaves the stay intact without preserving the Goddard Library status quo, the challenged implementation of EO 14343 may permanently eliminate the very settlement-agreement interest at issue before the courts can determine whether that implementation was lawful.

The limited modification is warranted by changed circumstances: Judge Cooper has denied preliminary relief in *Williams* without resolving the EO/labor-agreement issue; NASA's voluntary pause on GSA shipments has expired or is expiring; and, absent relief, NASA remains free to take irreversible action that may defeat the practical value of any later ruling in this case.

A narrow stay modification will not require this Court to decide the merits of the broader EO challenge immediately. It will simply permit Rule 65 relief tailored to preserving meaningful relief pending resolution of the EO's validity.

**IV. GESTA Is Likely to Succeed on Its Claim That EO 14343 Is Ultra Vires as Applied to NASA and That NASA's EO-Based Repudiation of the 2012 Settlement Agreement Is Contrary to Law.**

GESTA is likely to succeed on its claim that EO 14343 is ultra vires as applied to NASA and that NASA therefore may not rely on the Order to repudiate or disregard the 2012 Settlement Agreement. Section 7103(b)(1) authorizes the President to exclude an agency or subdivision from Chapter 71 only if the President determines that the agency or subdivision has as a primary function intelligence, counterintelligence, investigative, or national-security work, and that Chapter 71 cannot be applied consistent with national-security requirements. 5 U.S.C. § 7103(b)(1).

Judge Friedman has already held in closely related EO litigation that a sweeping exclusion order was likely ultra vires where it relied on an overbroad understanding of "national security," appeared to disregard the statutory "primary function" limitation, and threatened to make the exception swallow Congress's rule that federal collective bargaining is in the public interest. *Nat'l Treasury Emps. Union v. Trump*, 780 F. Supp. 3d 237, 257-63 (D.D.C. 2025). The reasoning applies with special force to NASA. NASA is a civilian space, aeronautics, science, and research agency. Its statutory mission includes the expansion of human knowledge and dissemination of information concerning its activities and results. See 51 U.S.C. § 20102(d)(1), (3). Treating all of NASA as primarily engaged in national-security work stretches Section 7103(b)(1) beyond its text.

Nor is the FLRA an adequate forum to decide this threshold question. Judge Friedman recognized in *NTEU* that where an EO itself purports to remove agencies from Chapter 71, the administrative review scheme is not realistically available because FLRA precedent treats exclusion from coverage as a jurisdictional bar. *Id.* at 249-51. Thus, the legality of NASA's

threshold reliance on EO 14343 is a proper subject for judicial preservation relief; otherwise, judicial review may be meaningless after the settlement-protected library has been dismantled.

NASA's position also conflates prospective derecognition with retroactive nullification. Even if EO 14343 could prospectively affect bargaining obligations, NASA has not shown that it may use the EO to erase a preexisting settlement agreement resolving a prior labor dispute and to take irreversible action before the lawfulness of that repudiation is determined. At minimum, GESTA is likely to succeed in showing that NASA may not irreversibly destroy the practical value of the 2012 Settlement Agreement while the validity of the EO-based repudiation remains pending.

At minimum, NASA's position that EO 14343 erased the practical force of the 2012 Settlement Agreement cannot be used to create irreversible consequences before the threshold legality of that position is adjudicated. Preservation relief is especially appropriate where the challenged implementation would otherwise make judicial review functionally meaningless.

**V. GESTA Will Suffer Irreparable Harm Without Immediate Preservation Relief.**

The harm is immediate and irreparable. NASA has already closed the Goddard Library, completed its rapid assessment, and prepared thousands of boxes for transfer or disposition. NASA's temporary pause on GSA shipments was set to last only until at least April 30, 2026. If NASA resumes transfer, disposition, destruction, donation, or dispersal of the collection, GESTA's ability to obtain meaningful relief under the 2012 Settlement Agreement may be lost permanently.

This harm is not the same irreparable-harm theory rejected in *Williams*. There, the court held that the plaintiffs had not established irreparable harm from the physical closure of the library space or from the FRA theories presented in that case. *Williams*, ECF No. 24 at 14-16,

19-27. GESTA's present theory is different: NASA is implementing EO 14343 by treating a labor settlement agreement as unenforceable, and unless the status quo is preserved, any later ruling that the EO is unlawful as applied to NASA may be incapable of restoring the settlement-protected resource.

The loss of labor representation, collective-bargaining rights, and contractual labor protections can constitute irreparable harm. *NTEU*, 780 F. Supp. 3d at 263-66. Here, the harm is even more concrete: a particular settlement agreement protects a particular library; NASA has cited EO 14343 as the reason that agreement no longer restrains its choices; and the protected resource is being dismantled while the EO's legality remains unresolved.

Once the Goddard Library collection is destroyed, discarded, permanently transferred outside NASA custody, irreversibly dispersed, or stripped of inventory and provenance sufficient to restore it, neither GESTA nor the Court can reconstruct the settlement-agreement status quo through a final judgment. That is irreparable harm.

## VI. The Balance of Equities and Public Interest Favor Preservation.

The requested relief is narrow and preserves the status quo. GESTA does not seek an order reopening the Goddard Library to the public, adjudicating the full *Williams* dispute, or micromanaging NASA's records decisions. It seeks only preservation of the collection and related provenance/location information sufficient to maintain meaningful relief if EO 14343 is held unlawful as applied to NASA.

The government has no legitimate interest in implementing an unlawful Executive Order or in irreversibly defeating a settlement agreement before the validity of its repudiation is determined. By contrast, GESTA, bargaining-unit employees, NASA researchers, and the public have strong interests in preserving the fruits of a labor settlement agreement, maintaining the

status quo during judicial review, and ensuring that statutes enacted by Congress are not nullified by executive fiat.

Preservation imposes modest burdens. NASA need only refrain from irreversible destruction, disposition, transfer outside NASA custody, or dispersal and maintain inventory, chain-of-custody, provenance, and location information sufficient to permit meaningful relief. Those burdens are slight compared with the permanent loss of a unique workplace resource and the practical nullification of a settlement agreement.

**VII. No Bond Should Be Required.**

Rule 65(c) gives the Court discretion to determine whether any security is proper. No bond should be required. GESTA seeks public-law and labor-rights preservation relief against federal officials. The requested order merely preserves the status quo and prevents irreversible action pending review. Requiring security would chill the ability of a labor organization to seek judicial protection of statutory and settlement rights.

**CONCLUSION**

For these reasons, GESTA respectfully requests that the Court grant limited intervention, modify the stay for the limited purpose of considering this emergency motion, and enter the accompanying temporary restraining order and preliminary injunction preserving the Goddard Library status quo pending resolution of EO 14343's validity as applied to NASA or further order of the Court.

**DATED: April 30, 2026**                                            **Respectfully Submitted,**

/s/ Zachary M. Weil
Zachary M. Weil (DC Bar No. 90042632)
Fellowship Law Group PLLC
2429 Nicollet Ave. Floor 2
Minneapolis, Minnesota 55404
(612) 249-8613 Ext. 702
zweil@fellowship.law


/s/ Ronald P. Weil
Ronald P. Weil (FL Bar No. 169966)
The Weil Law Firm P.A.
333 SE 2nd Ave. Suite 2000
Miami, Florida 33131
(305) 372-5352
rweil@weillawfirm.net
imendez@weillawfirm.net


Counsel for Proposed Plaintiff-Intervenor